**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| **JONATHAN RAY REVELLS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.  3:06-CV-179-WKW** |
| | ) | |
| **JAY JONES, et.al.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**DEFENDANTS' SPECIAL REPORT**</u>

COME NOW Jay Jones, Cary Torbert Jr., John McFarland, and Linda Stewart, Defendants in the above-styled cause, and submit their Special Report to the Court.

**INTRODUCTION**

On February 28, 2006, Plaintiff filed his Complaint in the United States District Court for the Middle District of Alabama.  On March 2, 2006, this Court ordered Defendants to file a Special Report and Answer within forty days of the date of the order.

Plaintiff was arrested on September 2, 2004, on charges of unlawful possession of a controlled substance and capital murder.  (Exhibit A, Inmate File of Johnathan Ray Revells, "Inmate File," Inmate Booking Sheet dated September 2, 2004.)  Plaintiff was booked into the Lee County Jail that same day.  (Ex. A.)  The Plaintiff is awaiting trial in these matters and is, therefore a pre-trial detainee.

**PLAINTIFF'S ALLEGATIONS**

Plaintiff alleged in his Complaint that, on September 2, 2004, he was given improper medical treatment, in that he was not given a brace for his finger.  (Plaintiff's Complaint, pp. 2-3.)  He also alleges that he has had no access to a toilet from December 6, 2005, until the date of his Complaint.  (Plaintiff's Complaint, p. 3.)  Plaintiff requests that all charges be dropped and/or

that he be awarded money damages.  (Plaintiff's Complaint, p. 3.)

## DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendants deny the allegations made against them by Plaintiff as being untrue and completely without basis in law or fact.  Defendants deny that they acted, or caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled. Defendants raise the defenses of Eleventh Amendment immunity, qualified immunity, Plaintiff's failure to comply with the Prison Litigation Reform Act, quasi-judicial and additional defenses presented below.  Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

## I.    FACTS

Sheriff Jay Jones has delegated the responsibility for the day-to-day functions of the Lee County Detention Facility to Major Cary Torbert, Jr., the Chief Deputy of Corrections of the Lee County Detention Facility.  As Sheriff of Lee County, Jay Jones is responsible for promulgating the policies governing the Lee County Detention Facility.  (Exhibit B, Affidavit of Jay Jones[1], "Jones aff.," ¶ 5.)

It is the policy of the Lee County Sheriff's Office that all inmates confined in the Lee County Detention Center are entitled to a level of health care comparable to that available to citizens in the surrounding community which will ensure their physical and emotion well-being. (Ex. B, Jones aff., ¶ 6; Exhibit C, Affidavit of Cary Torbert, Jr.[2], "Torbert aff.," ¶ 5.)  Medical care rendered to inmates in the Lee County Detention Center is delivered under the direction of a licensed health care provider.  (Ex. B, Jones aff., ¶ 7; Ex. C, Torbert aff., ¶ 6.)  No health care

---

[1]  Jay Jones is the duly elected Sheriff of Lee County, Alabama, and has served in such capacity since 1999.  (Jones aff., ¶ 2.)

[2] Cary Torbert, Jr. serves as Chief Deputy of Corrections of the Lee County Detention Facility and has obtained the rank of Major.  He has worked with the Lee County Sheriff's Office for over 32 years.  (Torbert aff., ¶ 2.)

personnel, Detention Center officer, or other employee of the Sheriff's Office will ever summarily or arbitrarily deny an inmate's reasonable request for medical services. (Ex. B, Jones aff., ¶ 8; Ex. C, Torbert aff., ¶ 7.) Medical, dental, and mental health matters involving clinical judgments are the sole province of the responsible physician, dentist, or psychiatrist or qualified psychologist, respectively. (Ex. B, Jones aff., ¶ 9; Ex. C, Torbert aff., ¶ 8.) Inmates will be guaranteed access to all diagnostic, laboratory, or other treatment services as directed by the responsible health care authority. (Ex. B, Jones aff., ¶ 10; Ex. C, Torbert aff., ¶ 9.)

It is the policy of the Lee County Sheriff's Office to allow inmates incarcerated in the Lee County Detention Center to request health care services at any time. (Ex. B, Jones aff., ¶ 11; Ex. C, Torbert aff.,¶ 10.) Two methods may be utilized by inmates incarcerated in the Lee County Detention Center in order to secure health care services: (1) Verbal Request: An inmate may make a verbal request for emergency medical attention to any member of the Detention Center staff at any time. (2) Written Request: An inmate in need of any type of medical attention may complete an Inmate Request form seeking medical attention and forward it to any member of the Detention Center staff. (Ex. B, Jones aff., ¶ 12; Ex. C, Torbert aff., ¶ 11.) Requests for medical treatment will be accepted by members of the Detention Center staff at any time. (Ex. B, Jones aff., ¶ 13; Ex. C, Torbert aff., ¶ 12.) When a request for medical treatment is made to a member of the Detention Center staff, the staff member receiving the request will notify the Shift Supervisor of the inmate's request. It is the Shift Supervisor's responsibility to ensure that the inmate's request is attended to in a prompt and proper manner. Any doubt as to whether an actual need exists for medical treatment shall be resolved in favor of the inmate and medical treatment will be offered. (Ex. B, Jones aff., ¶ 14; Ex. C, Torbert aff.,¶ 13.) Medical requests of an emergency nature are to be handled immediately. (Ex. B, Jones aff., ¶ 15; Ex. C, Torbert aff., ¶ 14.) As part

of the booking process, inmates are informed of the methods by which they may maintain medical treatment.  (Ex. B, Jones aff., ¶ 16; Ex. C, Torbert aff., ¶ 15.)

The Detention Center nurses, under the direction of the Detention Center Administrator, are charged with the responsibility of obtaining appointments for inmates with physicians in order that they may receive medical treatment or for scheduling times when the treating physician may attend to health care needs at the Detention Center.  (Ex. B, Jones aff., ¶ 17; Ex. C, Torbert aff., ¶ 16.)  All health care rendered to inmates will, at the doctor's discretion, be given privately to the inmate, outside the presence of a Detention Center official.  Should the physician request, a Detention Center officer will be present for any and all examinations the treating physician deems appropriate.  (Ex. B, Jones aff., ¶ 18; Ex. C, Torbert aff., ¶ 17.)  Sick call is conducted on a scheduled basis by a licensed practical nurse and is available to all inmates.  All inmates are required to pay a fee for non-emergency treatment.  Inmates will not be denied medical treatment.  When an inmate has insufficient funds in his/her trust account to pay for the assessed fee(s), a lien in the amount of the fee(s) will be placed on the inmate's trust account against future monies which may be received.  (Ex. B, Jones aff., ¶ 19; Ex. C, Torbert aff., ¶ 18.)

Upon the Plaintiff's admission to the Lee County Detention Facility on September 2, 2004, Nurse Stewart evaluated his medical condition.  (Exhibit D, Affidavit of Nurse Linda Stewart[3], "Stewart aff.," ¶ 4; Exhibit E, Inmate Medical File of Johnathan Ray Revells, "Medical File," Medical Notes dated September 2, 2004.)  The Plaintiff was coming off of a controlled

---

[3] Nurse Linda Stewart has been employed as a nurse with the Lee County Detention Facility for over four years. She is an L.P.N. and has been licensed for over twenty-years, having served as a nurse in the ICU and CCU in Cobb Hospital Emergency Room for fifteen-years.  Nurse Stewart taught Nursing Assistance Clinicals for two years at Career Institute.  She collected medical information for the law firm of Bellamy and Jones for three years, and she was employed as the personal nurse for Doctor Hoffman, in Phenix City, Alabama, for twelve years, prior to her coming to the Lee County Detention Facility.  (Ex. D, Stewart aff., ¶ 2.)

substance, and he stated that he had been in the woods for the past two weeks. He had several scratches all over his body. He had an old sore on his right ring finger which had opened back up the night before when he was running from the police. And he also had a two week old injury to his little finger. (Ex. D, Stewart aff., ¶ 5; Ex. E.) Nurse Stewart cleaned the wound on the ring finger and taped the little finger for comfort. She also set the Plaintiff up with an appointment to see Dr. John McFarland. (Ex. D, Stewart aff., ¶ 6; Ex. E.)

When Dr. McFarland saw the Plaintiff, he noted that the Plaintiff had had his right hand smashed two weeks before he was booked into the jail, resulting in a laceration to his ring finger and injury to the fifth finger. (Exhibit F, Affidavit of John McFarland, M.D.,[4] "McFarland aff.," ¶ 4; Ex. D, Stewart aff., ¶ 7; Exhibit G, Medical File, Medical Notes dated September 8, 2004.) The Plaintiff had not sought any medical care for his finger injuries for the two weeks prior to coming to the Lee County Detention Facility. (Ex. F, McFarland aff., ¶ 5; Ex. D, Stewart aff., ¶ 8.) Dr. McFarland ordered an x-ray of the Plaintiff's finger and determined that he had a minimally displaced fracture on his right little finger. (Ex. F, McFarland aff., ¶ 6; Ex. D, Stewart aff., ¶ 9; Ex. G; Exhibit H, Medical File, X-ray Report.)

When a person suffers a fracture of any bone, there is a ten-day window in which to correct the deformity. After ten days, the fracture becomes sticky, and it cannot be corrected at that time. Because the Plaintiff's injury had occurred longer than ten days before he was booked into the Detention Facility and because he had not sought medical care prior to that time, Dr. McFarland was unable to correct any deformity that might have occurred. In fact, the fracture

---

[4] John McFarland, M.D., is a licensed physician serving as an emergency room doctor with East Alabama Medical Center. Also, since 1994, Dr. McFarland has served as the treating physician for inmates at the Lee County Detention Facility. (Ex. E, McFarland aff. ¶ 2.)

was well into the healing process by that time.  The only option available by that time was to protect the finger as it continued to heal.  (Ex. F McFarland aff., ¶ 7; Ex. D, Stewart aff., ¶ 10.)

Dr. McFarland ordered that the Plaintiff's finger be buddy-taped or splinted.  He indicated that, medically, it would make no difference which method was used.  Therefore, because of security concerns Nurse Stewart buddy-taped the finger rather than splinting it.  (Ex. C, Torbert aff., ¶ 20; Ex. F, McFarland aff., ¶ 8; Ex. D, Stewart aff., ¶ 11.)  If splinting the finger would have been a superior medical option to the buddy-tape, Dr. McFarland would have insisted on the splint being used.  (Ex. F, McFarland aff., ¶ 9.)  Had Dr. McFarland indicated that a splint would be better for the Plaintiff medically, his recommendation would have been followed, and Major Torbert would have taken steps to preserve the security of the Detention Center such as possibly segregating the Plaintiff from the remainder of the population.  (Ex. C, Torbert aff., ¶ 20; Ex. D, Stewart aff., ¶ 11.)

It is the policy of the Lee County Sheriff's Office to always defer to the instructions of the trained medical professionals on all medical issues, and Major Torbert complied with this policy.  (Ex. B, Jones aff., ¶ 20; Ex. C, Torbert aff., ¶ 19.)  Further, per the policy of the Lee County Sheriff's Office, Nurse Stewart always follows the instructions of Dr. McFarland on all medical issues and did so with regard to the Plaintiff.  (Ex. D, Stewart aff., ¶ 12.)

After the finger healed, Dr. McFarland informed the Plaintiff that he should exercise his finger by stretching and bending it.  (Ex. E, McFarland aff., ¶ 10.)  Dr. McFarland examined the Plaintiff recently.  Upon examination, it was clear that the Plaintiff does in fact have use of the finger which he had broken.  (Ex. E, McFarland aff., ¶ 11.)  Any problems that he now has with the finger are a result of his not seeking medical care until two weeks after the injury had

occurred and because he has not followed Dr. McFarland's advice concerning exercising the finger. (Ex. E, McFarland aff., ¶ 11.)

The Plaintiff has been seen by the Nurse and Doctor several times for his finger injury and for other medical issues. (Exhibit I, Medical File.[5])

It is the policy of the Lee County Sheriff's Office to maintain a healthy environment within the Lee County Detention Center for the benefit of both inmates and the Detention Center staff. (Ex. B, Jones aff., ¶ 21; Ex. C, Torbert aff., ¶ 21.) It is the policy of the Lee County Sheriff's Office that the Lee County Detention Center accomplish scheduled maintenance in order to ensure that the Detention Center facility and equipment are kept in good repair. (Ex. B, Jones aff., ¶ 22; Ex. C, Torbert aff., ¶ 22.) Plumbing should be maintained in a serviceable condition, be free from leakage, have enough pressure to accomplish the tasks intended, and water should be the appropriate temperature. (Ex. B, Jones aff., ¶ 23; Ex. C, Torbert aff., ¶ 23.)

An inmate has the opportunity to notify any officer if any toilet is not in working order, and that officer will either fix the toilet or contact maintenance personnel to fix the toilet. (Ex. B, Jones aff., ¶ 24; Ex. C, Torbert aff., ¶ 24.) The Lee County Sheriff's Office employs full time maintenance personnel who are available to repair any toilet which is broken. (Ex. B, Jones aff., ¶ 25; Ex. C, Torbert aff., ¶ 25.) Major Torbert recalls only one instance where the Plaintiff notified a Lee County Detention Facility officer that his toilet was stopped up. After the complaint was made, an officer immediately went and unstopped the toilet. (Ex. C, Torbert aff., ¶ 26.)

Inmates have access to three or four toilets within their cellblock. There is a toilet in each cell in the cellblock. There is also a toilet in the dayroom of each cellblock. (Ex. B, Jones aff., ¶

---

[5] The remainder of the Plaintiff's Inmate Medical File not previously referenced as a separate exhibit is attached hereto as Exhibit I.

26; Ex. C, Torbert aff., ¶ 27.) In the event that a toilet cannot be repaired before the inmates lock down in their cells at night, the inmates housed in the cell with the broken toilet will not be locked down in order that they may have access to the dayroom toilet. (Ex. B, Jones aff., ¶ 27; Ex. C, Torbert aff., ¶ 28.) The Plaintiff has always had 24-hour access to a working toilet, and it would be a direct violation of policy for an inmate to ever be denied access to a working toilet. (Ex. B, Jones aff., ¶ 28; Ex. C, Torbert aff., ¶ 29.)

Internal grievance procedures at the Lee County Detention Facility are available to all inmates. It is the policy of the Lee County Sheriff's Office that inmates are permitted to submit grievances and that each grievance will be acted upon. (Ex. B, Jones aff., ¶ 29; Ex. C, Torbert aff., ¶ 30.) All inmates are provided access to a Lee County Detention Center Inmate Handbook. A copy of this handbook is placed in each cellblock for inmates to review whenever they wish. The inmate handbook states that an inmate may report a grievance on an inmate request form. Grievances are first answered by the appropriate staff at the lowest level in the chain of command. The inmate handbook also states that if the inmate is not satisfied with the first answer to his grievance, the inmate may appeal all the way up the chain of command, up to the Sheriff, who will make the final decision. (Ex. B, Jones aff., ¶ 30; Ex. C, Torbert aff., ¶ 31.)

The Defendants have never received a grievance from the Plaintiff concerning any of the allegations made the basis of his Complaint. (Ex. B, Jones aff., ¶ 31; Ex. C, Torbert aff., ¶ 32; Ex. D, Stewart aff., ¶ 13; Ex. F, McFarland aff., ¶ 13.) Per Lee County Sheriff's Office policy, an inmate has the opportunity to appeal any grievance to Major Torbert and up to Sheriff Jones if he were not satisfied with the response at the lower levels in the chain of command. The Plaintiff has not done so. Accordingly, the Plaintiff has failed to exhaust his administrative remedies at the Lee County Detention Center. (Ex. B, Jones aff., ¶ 31; Ex. C, Torbert aff., ¶ 32.)

The Plaintiff was aware of the method for submitting grievances. All properly submitted grievances are answered, and a copy is placed in the inmate's inmate file. Upon Major Torbert's review of the Plaintiff's inmate file, there are no grievances concerning the allegations made the basis of his Complaint. (Ex. C, Torbert aff., ¶ 33; Exhibit J, Inmate File[6].)

Sheriff Jones and Major Torbert have complied with all policies and procedures of the Lee County Detention Facility. They are not aware of nor have they authorized or allowed any deviation from said policies and procedures. (Ex. B, Jones aff., ¶ 32; Ex. C, Torbert aff., ¶ 34.)

## II.    LAW

### A.    All claims by Plaintiff against Defendants in their official capacities must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C. § 1983.

Plaintiff's claims against Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction as such claims are barred by the Eleventh Amendment to the United States Constitution. Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, Ala., 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacities claims must fail because 42 U.S.C. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United

---

[6] The remainder of the Plaintiff's Inmate File not previously referenced as a separate exhibit is attached hereto as Exhibit J.

States Constitution.  42 U.S.C. § 1983 (emphasis added).  The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  Any claims against Defendants in their official capacities should therefore be dismissed because they are not "persons" under § 1983 and therefore claims against them in their official capacities fail to state a claim upon which relief can be granted.  Id.; Carr v. City of Florence, Ala., 916 F.2d 1521, 1525 n.3 (11th Cir. 1990).

**B.    Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint.**

**1.    Plaintiff has failed to exhaust all Administrative Remedies.**

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983.  42 U.S.C. § 1997e (a).  The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him.  First, the Plaintiff has not exhausted the grievance procedures provided at the Lee County Detention Facility.  Despite the availability of a grievance procedure at the Lee County Detention Facility, the Plaintiff did not file a grievance regarding the incident made the basis of his Complaint or utilize the appeals process at the Lee County Detention Facility. Second, he has not alleged that he pursued any grievance through the State Board of Adjustment. See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies).

In addition to the grievance procedure at the local level, Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to Ala. Code § 41-9-60.  The Sheriff of Lee County is a state officer, as are his alter egos, and therefore would be entitled to sovereign immunity.  See Lancaster v. Monroe County,

116 F.3d 1419, 1429 (11th Cir. 1998). Due to this immunity, the State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.

As a result of Plaintiff's failure to exhaust these two remedies, he is barred from bringing this action under § 1997e(a). See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies, stating that the judicially recognized futility and inadequacy exceptions that existed under former § 1997e(a) are not applicable under the new mandatory exhaustion requirement of the PLRA); Booth v. Churner, 532 U.S. 731 (2001) (concluding that the exhaustion of administrative remedies is now mandatory and courts cannot excuse exhaustion).

> **2.**     **Plaintiff's claims are barred by the Prison Litigation Reform Act because he has not suffered any physical injury as a result of the allegations in his Complaint.**

> "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . . In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis."

Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309 (11th Cir. 2002). Because Plaintiff has not made a showing of physical injury that is greater than de minimis, his Complaint is due to be dismissed.

> **C.**     **Alternatively, Defendants are entitled to summary judgment based on qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.**

Defendants were acting within their discretionary authority as Sheriff and jail officials of Lee County during all times relevant to Plaintiff's Complaint because all their actions were taken in the furtherance of their job duties. See, e.g. Holloman ex rel. Holloman v. Harland, 370 F.3d

1252, 1267 (11th Cir. 2004).  Once a defendant has asserted the defense of qualified immunity and shown that he was acting within his discretionary authority, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001).  This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Id.  (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that these Defendants had "fair warning" that their conduct violated the plaintiff's constitutional rights?  Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of these Defendants was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred.  See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994).  A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d at 1424.  "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins v. Talladega Bd. of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

### 1.    The Plaintiff's Constitutional Rights were not violated.

#### a.  Medical Claim

In order to prevail under 42 U.S.C. § 1983 on his medical claim, Plaintiff must demonstrate that Defendants were deliberately indifferent to a serious medical condition.

Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." Hudson v. McMillian, 503 U.S. 1, 9 (1992).

> A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. A prison or medical official may be held liable under the Eighth Amendment for actions with "deliberate indifference" to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Mere negligence does not suffice to prove deliberate indifference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("Deliberate indifference describes a state of mind more blameworthy than negligence."). Furthermore, where a prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown. Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985).

In the instant case, the evidence shows that, the Plaintiff injured his finger two weeks prior to being booked into the Lee County Detention Facility. He did not seek medical care until he came to the Detention Facility, and therefore it was too late to correct any deformity that may have resulted from the fracture of his finger. However, Nurse Stewart and Dr. McFarland treated the Plaintiff the best they could in light of the problems arising from the Plaintiff's choice not to seek treatment. The records and the Defendants' affidavits affirmatively show that the Plaintiff has received constitutionally adequate medical care at the Lee County Detention Facility.

An inmate does not have a right to a *specific* kind of treatment. City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; *how [a municipality] obtains such treatment is not a federal constitutional question*") (emphasis added). Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the

medical health professionals who treated the Plaintiff.  See Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments").  The evidence is clear that the Plaintiff was given medical treatment.  Dr. McFarland used his sound medical judgment in determining the course of treatment for the Plaintiff's finger.  Dr. McFarland has testified that if a splint would have been a better option for the Plaintiff, he would have insisted on its use. However, Dr. McFarland determined that buddy-taping the finger would be just as effective as splinting it considering the age of the fracture.  The Plaintiff's desire for a different type of treatment does not rise to the level of a constitutional violation.

Furthermore, Sheriff Jones and Major Torbert do not have any kind of medical education, training or experience.  They rely upon the professional judgment of medical professionals who have been retained to provide care to the inmates.  While the Eleventh Circuit has not had an opportunity to visit this issue, the Eighth Circuit has addressed a similar claim.  In Meloy v. Bachmeier, 302 F.3d 845 (8th Cir. 2002), a former inmate sued several prison doctors, a nurse, and the prison's medical director[7] for failing to provide him with a positive air pressure machine needed to treat his sleep apnea.  302 F.3d at 847.  Reversing the district court's denial of summary judgment for the director, the Eighth Circuit began by making some common sense

---

[7] The medical director was a trained and licensed nurse.  302 F.3d at 846.

observations. "A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions." 302 F.3d at 847 citing, Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). Further, the Meloy court stated "[p]rison officials cannot substitute their judgment for a medical professional's prescription." Id. citing, Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000). Finally, the court held:

> The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision. Because the law was not clearly established that [the director] was deliberately indifferent to [the plaintiff's] serious medical needs, [the director] is entitled to qualified immunity.

302 F.3d at 849.

In the instant case, the evidence shows that Plaintiff was treated by the Jail Nurse and the Jail Medical doctor for all his medical problems. Sheriff Jones and Maj. Torbert, who are not trained and licensed medical providers, are in no way responsible for second-guessing the judgments of nurses and doctors. Furthermore, Nurse Stewart, like the director in Meloy, cannot, and should not, second guess the judgment of Dr. McFarland. The evidence shows that Dr. McFarland's sound medical orders were followed at all times. Therefore, Defendants in no way violated the Plaintiff's constitutional rights.

### b.    Conditions of Confinement Claims

In order to establish a conditions of confinement claim Plaintiff "must prove three elements: (1) a condition of confinement that inflicted unnecessary pain or suffering [constituting cruel and unusual punishment], (2) the defendant[s'] 'deliberate indifference' to that condition, and (3) causation. Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981) (first element); Wilson v. Seiter, [502] U.S. [294, 303], 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991) (second element); Williams v. Bennett, 689 F.2d 1389-90

(11th Cir. 1982) (third element).  Whether a particular condition of confinement constitutes cruel and unusual punishment is an objective inquiry; whether jail officials were deliberately indifferent to that condition is a subjective inquiry.  Wilson v. Seiter, 502 U.S. at 290.  There was insufficient evidence presented at the trial of this matter to establish either the objective or subjective components of the Plaintiff's conditions of confinement claims.

With regard to the objective component, the Eleventh Circuit has held that "*extreme deprivations are required to make out a conditions-of-confinement claim*" under the Eighth Amendment.  Chandler v. Crosby, 379 F.3d 1278, 1298 (11th Cir. 2004) (emphasis in original).  "[A] constitutional violation occurs only where the deprivation alleged is, objectively, 'sufficiently serious.'"  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  "[T]he Constitution does not mandate comfortable prisons."  Chandler, 379 F.3d. at 1289.  In the instant case, the Plaintiff cannot present evidence of any *extreme* deprivation that could be objectively considered "cruel and unusual."  The evidence shows that when the Plaintiff notified an officer that his toilet was stopped up, the officer fixed it immediately.  Further, the Plaintiff always had access to at least one working toilet.

Even if the conditions were objectively "cruel and unusual," there must still be evidence of subjective deliberate indifference on the part of each Defendant.  "To be deliberately indifferent, a [jail] official must knowingly or recklessly disregard an inmate's basic needs."  LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993).  "[A] plaintiff must prove that the official possessed knowledge both of the infirm condition and of the means to cure that condition, 'so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'"  Id. (quoting Duckworth v. Franzen, 780 F.2d 645, 653 (7th Cir. 1985), cert. denied, 479 U.S. 816 (1986).  There must be evidence that the official "knows of

and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 114 S. Ct. 1970, 1979 (1994). The Court equates the level of culpable intent required to the standard employed in the context of *criminal* recklessness prosecutions. Id. at 1979-80. No liability can be attributed to "an official's failure to alleviate a significant risk which he should have perceived but did not." Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996). Where jail officials attempt to remedy constitutional short-comings but fail to do so, the official cannot be found to have been "deliberately indifferent" unless the official knew of but disregarded appropriate effective alternatives. LaMarca, 995 F.2d at 1536.

In the instant case, even if there were an excessive risk to his health or safety, the Plaintiff has not even alleged that any of the Defendants knew of or disregarded that risk. Evidence that a condition existed without accompanying evidence that each Defendant was deliberately indifferent to such a condition does not establish constitutional liability. See, e.g., Smith v. Copeland, 87 F.3d 265, 268 (8th Cir. 1996) ("To prevail on an Eighth Amendment claim in this context, an inmate must show that correctional officers were deliberately indifferent to the risk of harm posed by the raw sewage. Thus, not every overflowed toilet in a prison amounts to a constitutional violation." (citations omitted)). The Plaintiff has not alleged that any of the Defendants were aware of the alleged toilet problem. Further, it is obvious that Dr. McFarland and Nurse Stewart have no duty or authority with regard to the toilet situation. Because the Plaintiff cannot meet the objective or subjective tests as set forth in Farmer, supra, his conditions of confinement claims are due to be dismissed.

Furthermore, the United States Supreme Court has held that a significant injury is

required in order to sustain a conditions of confinement claim. <u>Porter v. Nussle</u>, 534 U.S. 516, 528( U.S.2002); <u>see also</u> <u>Smith</u>, 87 F.3d at 268 (noting that the plaintiff "did not allege that he was exposed to disease or suffered any other consequences of the exposure [to raw sewage]" and finding a de minimus imposition that did not amount to a constitutional violation). The Plaintiff has not alleged that he suffered <u>any</u> injury as a result of the toilet allegedly being broken. Accordingly, the Plaintiff cannot sustain a conditions of confinement claim.

### 2. No clearly established law provided the Defendants with fair warning that their conduct was unlawful.

Assuming, *arguendo*, that the Plaintiff could demonstrate a constitutional violation, he must still show that clearly established law provided the Defendants with fair warning that their conduct was unlawful. He may do so by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law. <u>Storck v. City of Coral Springs</u>, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted). The Eleventh Circuit has identified the latter method as an "obvious clarity" case. <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted). In order to show that the conduct of the Defendant was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent." <u>Willingham</u>, 321 F.3d at 1301. "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." <u>Storck</u>, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

Plaintiff cannot meet his burden of demonstrating a constitutional violation or showing that clearly established law provided the Defendants with fair warning that their conduct was unlawful. Therefore, Defendants are entitled to qualified immunity.

**D.     Plaintiff has failed to allege sufficient personal involvement on each claim.**

The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by the defendants and the constitutional deprivation.  Swint v. City of Wadley, 51 F. 3d 988 (11th Cir. 1995).  The requisite causal connection may be shown by the personal participation of the defendant, a policy established by the defendant resulting in indifference to constitutional rights or a breach of a duty imposed state of local law which results in constitutional injury.  Zatler v. Wainwright, 802 F. 2d 397 (11th Cir. 1986).

**1.     As to his conditions of confinement claim, the Plaintiff has failed to allege personal involvement on the part of any Defendant.**

The Plaintiff has failed to allege that any of the Defendants were in any way personally involved in any alleged violation of Plaintiff's constitutional rights concerning any of the conditions of his confinement.  Plaintiff has offered no allegation demonstrating that the Defendants were in any way involved in the actions he claims were constitutionally infirm.  There are absolutely no facts to show that these Defendants personally participated in these claims, nor does the Plaintiff allege specifically how these Defendants violated his constitutional rights in regard to these claims. The Plaintiff offers no allegations specific to any of the Defendants and does not allege that any of the Defendants were aware of any unconstitutional conditions.  He only alleges that "staff members" were aware of the toilet problem.  And as to Dr. McFarland and Nurse Stewart, it is obvious that, as medical staff, they have no duty or authority over the toilet situation.  As such, Plaintiff's conditions of confinement claims are due to be dismissed.

The lack of factual allegations against the Defendants make it clear that the Plaintiff is attempting to hold the Defendants liable on the theory of *respondeat superior*.  To the extent that Plaintiff's claims are an attempt to hold the Defendants liable under a *respondeat superior* theory, his claim must similarly fail.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691

(1978). The Eleventh Circuit in <u>Hartley v. Parnell</u>, 193 F.3d 1263 (11th Cir. 1999), established exactly what is required to state a claim (or prove) supervisory liability:

> Supervisory liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." <u>Brown v. Crawford</u>, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).

193 F.3d at 1269. The causal connection may also be established where the supervisor's improper "custom or policy . . . result[s] in deliberate indifference to constitutional rights." <u>Rivas v. Freeman</u>, 940 F.2d 1491, 1495 (11th Cir. 1991) (citing <u>Zatler v. Wainwright</u>, 802 F.2d 397 (11th Cir. 1986)). In light of the applicable law, the Plaintiff's allegations are insufficient to create liability on the part of the Defendants. As such, Plaintiff's conditions of confinement claims are due to be dismissed.

**2.    As to his medical claims, the Plaintiff has failed to allege personal involvement on behalf of Sheriff Jones.**

The Plaintiff has failed to allege that Sheriff Jones was in any way personally involved in his medical claims. Plaintiff has offered no allegation demonstrating that Sheriff Jones was in any way involved in the actions he claims were constitutionally infirm with regard to these claims. There are absolutely no facts in the Complaint to show that Sheriff Jones violated Plaintiff's constitutional rights in regard to these claims. In fact, there is no mention of anything Sheriff Jones allegedly did or failed to do in the entire body of the Complaint. As such, Plaintiff's medical claims are due to be dismissed against Sheriff Jones.

The lack of factual allegations against Sheriff Jones make it clear that the Plaintiff is

attempting to hold Sheriff Jones liable on the theory of *respondeat superior*. To the extent that Plaintiff's claims are an attempt to hold Sheriff Jones liable under a *respondeat superior* theory, his claim must similarly fail.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).  The Eleventh Circuit in Hartley v. Parnell, 193 F.3d 1263 (11th Cir. 1999), established exactly what is required to state a claim (or prove) supervisory liability:

> Supervisory liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation.  The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.  The deprivations that constitute widespread abuse sufficient to notify the supervising official must be "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."  Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).

193 F.3d at 1269.  The causal connection may also be established where the supervisor's improper "custom or policy . . . result[s] in deliberate indifference to constitutional rights." Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991) (citing Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986)).  In light of the applicable law, the Plaintiff's allegations are insufficient to create liability on the part of Sheriff Jones.  As such, Plaintiff's medical claims are due to be dismissed as to Sheriff Jones.

### F.    The injunctive relief requested by the Plaintiff is due to be denied.

Defendants first note that they lack the authority to drop the charges pending against the Plaintiff because Alabama law states clearly that the power to prosecute violations of the Criminal Code rests with the district attorney and his assistants.  Ala. Code 1975, § 12-17-84. The duty of Alabama sheriffs and their employees is limited, in this regard, to "ferret out crime [and] to apprehend and arrest criminals . . . ."  Ala. Code 1975, § 36-22-3(4) (1991 replacement volume).

Further, Plaintiff's request for this type of relief is barred by the dictates set forth in Heck v. Humphrey, 512 U.S. 477, 486-87 (1994); see Uboh v. Reno, 141 F.3d 1000, 1006 (11th Cir. 1998) (explaining that "a civil proceeding challenging the grounds on which the prosecution against Uboh had been commenced *indirectly* would implicate the question of Uboh's guilt; this type of parallel inquiry by way of a civil suit prior to the resolution of a criminal action based on the same set of events is precisely the quandary that Heck prohibits") (emphasis added).

Finally, such a claim for relief is barred by absolute quasi-judicial immunity. "Absolute quasi-judicial immunity derives from absolute judicial immunity. Judges are absolutely immune from civil liability under section 1983 for acts performed in their judicial capacity, provided such acts are not done in the 'clear absence of all jurisdiction.' Nonjudicial officials are encompassed by a judge's absolute immunity when their official duties 'have an integral relationship with the judicial process.'" Roland v. Phillips, 19 F.3d 552 (11th Cir. 1994) (internal citations omitted). The Eleventh Circuit in Roland v. Phillips, 19 F.3d 552 (11th Cir. 1994) has recognized that law enforcement personnel in executing a facially valid court order are entitled to absolute quasi-judicial immunity from suit in § 1983 actions. In holding that the sheriff and deputy sheriff were entitled to absolute quasi-judicial immunity, the court stated that other circuits have held that law enforcement officers executing facially valid court orders are protected by such immunity. 19 F.3d at 555. The Court further stated: "Law enforcement officers must not 'be called upon to answer for the legality of decisions which they are powerless to control' or 'be required to act as pseudo-appellate courts scrutinizing the orders of judges.'" Roland 19 F. 3d at 556. In the instant case, the Plaintiff is charged and incarcerated pursuant to a facially valid order from a court of competent jurisdiction.

For all these reasons, the Plaintiffs request that his charges be dropped is due to be

denied.

### G.    Summary Judgment Standard

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant.  Greason v. Kemp, 891 F.2d 829, 831 (11th Cir. 1990).  However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit.  See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000).  "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'"  Reeves, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[8]  "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'"  Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

### CONCLUSION

Defendants deny each and every allegation made by Plaintiff Johnathan Ray Revells, in the Complaint.  Defendants have not acted in a manner so as to deprive Plaintiff of any right to which he is entitled.

---

[8] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'"  Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## MOTION FOR SUMMARY JUDGMENT

Defendants respectfully request that this Honorable Court treat their Special Report as a

Motion for Summary Judgment, and grant unto them the same.

Respectfully submitted this 10th day of April, 2006.

> **s/Amanda Kay Morgan**
> AMANDA KAY MORGAN Bar No.  ALL079
> Attorneys for Defendants
> WEBB & ELEY, P.C.
> 7475 Halcyon Pointe Drive (36117)
> Post Office Box 240909
> Montgomery, Alabama  36124
> Telephone:  (334) 262-1850
> Fax:  (334) 262-1889
> E-mail:  amorgan@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 10th day of April, 2006, I have electronically filed the
foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed a true
and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-
CM/ECF participant:

> Johnathan Ray Revells
> Lee County Detention Center
> PO Box 2407
> Opelika, AL 36803

> **s/Amanda Kay Morgan**
> OF COUNSEL