IN THE UNITED STATS DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

RECEIVED
2006 APR 27 A 9:51

| | |
|---|---|
| JOHNATHAN RAY REVELLS, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:06-CV-179-WKW |
| ) | |
| JAY JONES, et.al., ) | |
| Defendant. ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' WRITTEN REPORT

A. The following are the Plaintiff's answers to the section marked (I.) in the Defendants special report. (Defendants Special Report p. 2-9)

The Plaintiff was seen by Nurse Stewart on September 2nd 2004 in order to draw blood for an investigator at which time Nurse Stewart treated some other injuries the Plaintiff had received on the night of the 1st day of September, 2004. The Plaintiff had some minor scratches on various places on his body. The Plaintiff also had a cut on his right ring finger which occured on August 25th 2004. The Plaintiff also had an injury to his right little finger which occured on September 1st 2004. The cut had also reopened on the night of September 1st 2004. The Plaintiff told Nurse Stewart that he could not move his little finger and the Plaintiff also told Nurses Stewart that he thought that his little finger was broken. The Plaintiff was told by Nurse Stewart all she could do was buddy-tape the little finger. Nurse Stewart then buddy-taped the Plaintiffs finger to the 2 fingers beside his right little finger. This did help the pain.

-1-

But buddy-taping did not correct the injury. Nurse Stewart then set up an appointment to see Dr. McFarland. Nurse Stewart took no other action to correct the injury to the Plaintiffs right ring finger. (Defendants Special Report p. 4-5)

The Plaintiff was seen by Dr. McFarland on September 8th 2004. Seven (7) days after the injury to his right little finger. Dr. McFarland then ordered an X-ray on the Plaintiffs right little finger. Dr. McFarland then told Nurse Stewart that the Plaintiffs little finger should be splinted. Dr. McFarland noted on September 8th 2004. That the fifth finger is swollen and tender. Dr. McFarland also noted that it doesn't straighten out completely at the PIPJ. (Ex. G, Medical file, Medical notes dated September 8th 2004.) Dr. McFarland also noted that the injury was three weeks old. The Plaintiff never stated to Dr. McFarland that the injury was three weeks old. Had Nurse Stewart took the proper steps on September 2nd 2004 to correct the injury the current deformity may have been prevented. (Defendants Special Report p. 5)

The x-ray that was ordered by Dr. McFarland on September 8th 2004 was taken by Southern Radiology Services on September 9th 2004. (Ex. H, Medical File, X-Ray Report) This was taken eight (8) days after the injury occurred. The X-ray did determin that the 5th finger was in fact fractured. The Plaintiff did not see Dr. McFarland again until September 15th 2004. (14) days after the injury occurred. Dr. McFarland told the Plaintiff that the finger should be splinted. Nurse Stewart then told Dr. McFarland that Major Torbert said the Plaintiff could not have the splint because of his charge. Major Torbert is not a licensed Physician therefor he should not have any say as to weather or not the Plaintiff

-2-

should or should not have a splint. There were not any security concerns because at that time the Plaintiff was segregated form the rest of the population. So there were no security concerns. Therefor Nurse Stewart did not follow the instructions of Dr McFarland. Because no action was taken by Nurse Stewart on September 2nd 2004, the problems the Plaintiff now has with pain and disfigerment could have been prevented. The Plaintiff was never seen for the injury by Dr McFarland or Nurse Stewart again. The Plaintiff is unable to exercise the finger because the finger will not bend also it causes the Plaintiff a high level of pain to bend the finger. The Plaintiff was never told by Dr McFarland to exercise the finger after it healed because he was never seen by Dr McFarland again for the injury (Defendants Special Report p. 5-7)

On or about December 6th 2005 maintenance personnel came into cellblock E-5 to fix some toilets that were leaking. They were unable to fix the toilet in the day room. The toilet in the dayroom has not worked sense December 6th 2005. The Plaintiff was sleeping in the dayroom along with a number of other inmates at that time. During that time the Plaintiff had access to eight (8) other toilets in the cells of cellblock E-5 during the daytime hours (4:00am - 10:30pm). But during the night time hours (10:30pm - 4:00am) the cells in cellblock E-5 are locked down at this time the Plaintiff and the other inmates that were sleeping in the dayroom of cellblock E-5 had no access to a working toilet. This took place from December 6th 2005 untill about March 1st 2006. The Plaintiff has never told any staff member of his toilet being stoped up. The plaintiff has never had a toilet that was stoped up (Defendants Special Report p. 7-8)

-3-

The Plaintiff and outher inmates were denied access to a working toilet on a number of nights by the night shift supervisor's. The Plaintiff was told by the night shift supervisor's that they could not leave a cell open because Major Torbert told them to lockdown all cells. When the Plaintiff asked the night shift supervisor's which toilet he was going to use. The Plaintiff was told to use the sink. The Plaintiff was told this by the night shift supervisor's on a number of nights all the inmates in cellblock E-5 during this time were witness to this from December 6th 2005 untill March 1st 2006. The toilet in the dayroom of cellblock E-5 still has not been fixed as of the date of this responce (Defendants Special Report p. 8)

The Plaintiff did not have a inmate handbook untill March 1st 2006. the Plaintiff had not seen an inmate handbook untill March 1st 2006. The Plaintiff had wrote a number of grievance forms about the toilet. Not one of those grievances were answered. The Plaintiff mailed a grievance form to Major Torbert by U.S. Mail. The Plaintiff also mailed a grievance form to Sheriff Jay Jones. The Plaintiff told Major Torbert and Jay Jones about the toilet. The Plaintiff still did not get a responce from any of the grievance that were sent in. The Plaintiff was a witness to outher inmates putting in grievances about the toilet. They did not get a responce to the grievances. The Plaintiff was unable to exhaust the administrative remebies at the Lee County Detention Center. Due to the staff not following the Policies of the Lee County Sheriff's office. The Plaintiff has put in grievances concerning of the policies that are not being followed. The Plaintiff has yet to get a responce to thoes grievances. Therefor it is impossible for the Plaintiff to appeal up the chain of command if he never was given a responce to thoes grievances (Defendants Special Report p. 8-9)

-4-

B. The following are the Plaintiff's answers to the section Marked (II)(B) in the Defendants Special Report (Defendants Special Report p.10)

The Plaintiff did in fact exhaust all Administrative Remedies known to him, were he put in grievances to the shift supervisors and when they did not respond to these grievances. The Plaintiff sent grievances to Major Torbert and Sheriff Jay Jones by U.S. Mail these grievances did not get responed to. The Plaintiff was unaware of any other action he could have taken. (Defendants Special Report p.10-11)

WHEREFOR the Plaintiff requests this honorable court to accept the foregoing response to the Defendants Special Report to be true facts in the above action.

Respectfully submitted this 24th day of April, 2006.

Revells, Johnathan R.
Johnathan Ray Revells
Lee County Detention Center
PO Box 2407
Opelika, Al 36803

-5-

## CERTIFICATE OF SERVICE

I hereby certify that on this the 24th day of April 2006, That I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following:

Amanda Kay Morgan
WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive (36117)
Post Office Box 240909
Montgomery, AL. 36124

Revells, Johnathan R.
JOHNATHAN RAY REVELLS
Lee County Detention Center
PO Box 2407
Opelika AL 36803