# Exhibit A
# Inmate File of Johnathan Ray Revells
# Inmate Booking Sheet
# dated September 2, 2004

```
                             LEE COUNTY SHERIFF'S OFFICE                    PAGE    1
9/02/2004     01:14:21          INMATE BOOKING SHEET
===================================================================================
OOKING NO: 040004175

NMATE NAME: REVELLS JOHNATHAN RAY                          RACE: W      SEX: M
       ALIAS:                                                HT: 5'11"  HAIR: RED
       ALIAS:                                                WT: 220    EYES: GRN
     ADDRESS: 5 ELM STREET                              COMPLEX:
  ITY/ST/ZIP: PHENIX CITY, AL 36867                        SSN: ████████
  HOME PHONE: 000-000-0000                               DL ST:        DLN:
         DOB: ███████79    AGE:  25                        SID:
  PLCE BIRTH: PHENIX CITY                                LOCID: 16612
       STATE: AL
   M. STATUS:
    RELIGION:
 GANG ASSOC:
 SCARS/TATTOOS: RED LEFT ARM/ DIANA W/ HEART R-ARM
 KNOWN ENEMIES:
     REMARKS:
---------------------------- NEXT OF KIN ---------------------------
 NEXT OF KIN: JONNEY REVELLS                         RELATIONSHIP: DAD
     ADDRESS:                                               PHONE: 000-000-0000
  CITY/ST/ZIP: ,
     REMARKS:
--------------------------- EMPLOYER INFO --------------------------
    EMPLOYED:
EMPLOYER NAME:
     ADDRESS:
  CITY/ST/ZIP: ,
       PHONE: 000-000-0000
---------------------------- MEDICAL -------------------------------
  HANDICAPPED:      NEEDS:
      GLASSES:      SMOKE:
MEDICAL NEEDS:      NEEDS:
    PHYSICIAN:                       PHONE: 000-000-0000
      REMARKS:

      REMARKS:
      REMARKS:
---------------------------- PROPERTY ------------------------------
        CASH:        $00.00
  DESCRIPTION:
ADD. PROPERTY: STREET CLOTHES.
ADD. PROPERTY:
ADD. PROPERTY:
   BIN NUMBER: 130
VEH IMPOUNDED:
  IMPOUND LOT:
      REMARKS:
      REMARKS:
===================================================================================
I HAVE READ THE ABOVE ACCOUNTING OF MY PERSONAL INFORMATION, MEDICAL
INFORMATION, MONEY, AND OTHER PROPERTY AND I FIND IT TO BE TRUE AND ACCURATE.

INMATE: _____    DATE: 9/__   TIME: _____

BOOK OFFICER: _Guapp_____         DATE: 9/2    TIME: _____
```

```
                          LEE COUNTY SHERIFF'S OFFICE
09/02/2004    01:14:21       INMATE BOOKING SHEET                   PAGE    2
===============================================================================
BOOKING NO: 040004175    INMATE NAME: REVELLS JOHNATHAN RAY
===============================================================================
        COURT:                    ATTORNEY ON REC:
        JUDGE:                         PHONE: 000-000-0000
      REMARKS:
      REMARKS:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
    BOOK DATE: 09/02/2004  BOOK TIME: 01:07  BOOK TYPE: NORMAL

   ARREST DATE: 09/02/2004       BOOKING OFFICER: MS. GRIGGS
   ARREST DEPT: LCSO             CELL ASSIGNMENT: E6
 ARRST OFFICER: SURRETT               MEAL CODE: 01   LEE COUNTY
 PROJ. RLSDATE: 00/00/0000             FACILITY: 01   COUNTY JAIL
  SEARCH OFFCR: TUCKER/TOLBERT/SIMS  CLASSIFICATION:
   TYPE SEARCH: PAT                   WORK RELEASE: N
 INTOX RESULTS:

        HOLDS:
       AGENCY:                    REASON:
       AGENCY:                    REASON:
       AGENCY:                    REASON:
       AGENCY:                    REASON:

        NOTES:
        NOTES:
        NOTES:
```

```
                          LEE COUNTY SHERIFF'S OFFICE
 09/02/2004     01:14:21        INMATE CHARGE SHEET                    PAGE    3
 =================================================================================
 BOOKING NO: 040004175      INMATE NAME: REVELLS JOHNATHAN RAY
 =================================================================================
   CHARGE NO:  1  DISPOSITION: OPEN              HOLD: N

 ALA STATUTE:                          # OF COUNTS:   1
     OFFENSE: UNLAW POSSESSION CON SUB    WARRANT #:
      CASE #: 10*1472-04A
     BOND AMT: $3000                          FINE:        $0.00
     BAIL AMT:
 INIT APPEAR: 00/00/0000           SENTENCE DATE: 00/00/0000
 RELEASE DTE: 00/00/0000
 ARREST DATE: 09/02/2004             ARST AGENCY: LCSO
 ARST OFFICR: SURRETT                    COUNTY: LEE
       COURT:                             JUDGE:
 DEF ATTORNY:                      DIST ATTORNEY:
    COMMENTS:
    COMMENTS: HOLDING MR. REVELLS FROM INVESTIGATOR VAN JACKSON.
    COMMENTS:
```

---

13A-5-40(a)(2)

Captial Murder

# Exhibit B
# Affidavit of Jay Jones

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| **JONATHAN RAY REVELLS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.  3:06-CV-179-WKW** |
| | ) | |
| **JAY JONES, et.al.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**AFFIDAVIT OF JAY JONES**</u>

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF LEE** | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Jay Jones, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.      My name is Jay Jones.  I am over the age of nineteen and competent to execute this affidavit.

2.      I am the duly elected Sheriff of Lee County, Alabama, and have served in such capacity since 1999.

3.      I am familiar with the Plaintiff, Johnathan Ray Revells, due to his incarceration in the Lee County Detention Facility.  I have no personal knowledge of any of the specific allegations that form the basis of Plaintiff's Complaint.

4.      I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

5.      I have delegated the responsibility for the day-to-day functions of the Lee County Detention Facility to Major Cary Torbert, Jr., the Chief Deputy of Corrections of the

Lee County Detention Facility. As Sheriff of Lee County, I am responsible for promulgating the policies governing the Lee County Detention Facility.

6.      It is the policy of the Lee County Sheriff's Office that all inmates confined in the Lee County Detention Center are entitled to a level of health care comparable to that available to citizens in the surrounding community which will ensure their physical and emotion well-being.

7.      Medical care rendered to inmates in the Lee County Detention Center is delivered under the direction of a licensed health care provider.

8.      No health care personnel or Detention Center officer or other employee of the Sheriff's Office will ever summarily or arbitrarily deny an inmate's reasonable request for medical services.

9.      Medical, dental, and mental health matters involving clinical judgments are the sole province of the responsible physician, dentist, or psychiatrist or qualified psychologist, respectively.

10.      Inmates will be guaranteed access to all diagnostic, laboratory, or other treatment services as directed by the responsible health care authority.

11.      It is the policy of the Lee County Sheriff's Office to allow inmates incarcerated in the Lee County Detention Center to request health care services at any time.

12.      Two methods may be utilized by inmates incarcerated in the Lee County Detention Center in order to secure health care services:

a.      Verbal Request:  An inmate may make a verbal request for emergency medical attention to any member of the Detention Center staff at any time.

b.      Written Request:  An inmate in need of any type of medical attention may complete an Inmate Request form seeking medical attention and forward it to any member of the Detention Center staff.

13.    Requests for medical treatment will be accepted by members of the Detention Center staff at any time.

14.    When a request for medical treatment is made to a member of the Detention Center staff, the staff member receiving the request will notify the Shift Supervisor of the inmate's request. It is the Shift Supervisor's responsibility to ensure that the inmate's request is attended to in a prompt and proper manner. Any doubt as to whether an actual need exists for medical treatment shall be resolved in favor of the inmate and medical treatment will be offered.

15.    Medical requests of an emergency nature are to be handled immediately.

16.    As part of the booking process, inmates are informed of the methods by which they may maintain medical treatment during the booking process.

17.    The Detention Center nurses, under the direction of the Detention Center Administrator, are charged with the responsibility of obtaining appointments for inmates with physicians in order that they may receive medical treatment or for scheduling times when the treating physician may attend to health care needs at the Detention Center.

18.    All health care rendered to inmates will, at the doctor's discretion, be given privately to the inmate, outside the presence of a Detention Center official. Should the physician request, a Detention Center officer will be present for any and all examinations the treating physician deems appropriate.

19.    Sick call is conducted on a scheduled basis by a licensed practical nurse and is available to all inmates. All inmates are required to pay a fee for non-emergency treatment. Inmates will not be denied medical treatment. When an inmate has insufficient funds in his/her trust account to pay for the assessed fee(s), a lien in the amount of the fee(s) will be placed on the inmate's trust account against future monies which may be received.

20.     It is the policy of the Lee County Sheriff's Office to defer to the instructions of the trained medical professionals on all medical issues.

21.     It is the policy of the Lee County Sheriff's Office to maintain a healthy environment within the Lee County Detention Center for the benefit of both inmates and the Detention Center staff.

22.     It is the policy of the Lee County Sheriff's Office that the Lee County Detention Center accomplish scheduled maintenance in order to ensure that the Detention Center facility and equipment are kept in good repair.

23.     Plumbing should be maintained in a serviceable condition, be free from leakage, have enough pressure to accomplish the tasks intended, and water should be the appropriate temperature.

24.     An inmate has the opportunity to notify any officer if any toilet is not in working order, and that officer will either fix the toilet or contact maintenance personnel to fix the toilet.

25.     The Lee County Sheriff's Office employs full time maintenance personnel who are available to repair any toilet which is broken.

26.     Inmates have access to three or four toilets within their cellblock. There is a toilet in each cell in the cellblock. There is also a toilet in the dayroom of each cellblock.

27.     In the event that a toilet is not able to be repaired before the inmates lock down in their cells at night, the inmates housed in the cell with the broken toilet will not be locked down in order that they may have access to the dayroom toilet.

28.     It would be a direct violation of my policy for an inmate to ever be denied access to a working toilet, and I have never received any information that this has ever occurred.

4

29.     Internal grievance procedures at the Lee County Detention Facility are available to all inmates.  It is the policy of the Lee County Sheriff's Office that inmates are permitted to submit grievances and that each grievance will be acted upon.

30.     All inmates are provided access to a Lee County Detention Center Inmate Handbook.  A copy of this handbook is placed in each cellblock for inmates to review whenever they wish.  The inmate handbook states that an inmate may report a grievance on an inmate request form.  Grievances are first answered by the appropriate staff at the lowest level in the chain of command.  The inmate handbook also states that if the inmate is not satisfied with the first answer to his grievance, the inmate may appeal all the way up the chain of command, up to the Sheriff, who will make the final decision.

31.     I have never received a grievance from the Plaintiff concerning any of the allegations made the basis of his Complaint.  Per Lee County Sheriff's Office policy, an inmate has the opportunity to appeal any grievance to me if he were not satisfied with the response at the lower levels in the chain of command.  Accordingly, the Plaintiff has failed to exhaust his administrative remedies at the Lee County Detention Center.

32.     I have complied with all policies and procedures of the Lee County Detention Facility.  I am not aware of nor have I authorized or allowed any deviation from said policies and procedures.

33.     I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit and that the above statements were made by drawing from my personal knowledge of the situation.

JAY JONES

**SWORN TO** and **SUBSCRIBED** before me this __11__ day of April, 2006.


NOTARY PUBLIC
My Commission Expires:_____

6

# Exhibit C
# Affidavit of Cary Torbert, Jr.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| **JONATHAN RAY REVELLS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Civil Action No. 3:06-CV-179-WKW** |
| | ) |
| **JAY JONES, et.al.,** | ) |
| | ) |
| **Defendant.** | ) |

### AFFIDAVIT OF CARY TORBERT, JR.

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF LEE** | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Cary Torbert, Jr., who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.      My name is Cary Torbert, Jr.  I am over the age of nineteen and competent to execute this affidavit.

2.      I serve as Chief Deputy of Corrections of the Lee County Detention Facility and have obtained the rank of Major.  I have worked with the Lee County Sheriff's Office for over 32 years.

3.      I am familiar with the Plaintiff, Johnathan Ray Revells due to his incarceration in the Lee County Detention Facility.

4.      I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

5.      It is the policy of the Lee County Sheriff's Office that all inmates confined in the Lee County Detention Center are entitled to a level of health care comparable to that

available to citizens in the surrounding community which will ensure their physical and emotion well-being.

6.    Medical care rendered to inmates in the Lee County Detention Center is delivered under the direction of a licensed health care provider.

7.    No health care personnel or Detention Center officer or other employee of the Sheriff's Office will ever summarily or arbitrarily deny an inmate's reasonable request for medical services.

8.    Medical, dental, and mental health matters involving clinical judgments are the sole province of the responsible physician, dentist, or psychiatrist or qualified psychologist, respectively.

9.    Inmates will be guaranteed access to all diagnostic, laboratory, or other treatment services as directed by the responsible health care authority.

10.    It is the policy of the Lee County Sheriff's Office to allow inmates incarcerated in the Lee County Detention Center to request health care services at any time.

11.    Two methods may be utilized by inmates incarcerated in the Lee County Detention Center in order to secure health care services:

    a.    <u>Verbal Request</u>:  An inmate may make a verbal request for emergency medical attention to any member of the Detention Center staff at any time.

    b.    <u>Written Request</u>:  An inmate in need of any type of medical attention may complete an Inmate Request form seeking medical attention and forward it to any member of the Detention Center staff.

12.    Requests for medical treatment will be accepted by members of the Detention Center staff at any time.

13.    When a request for medical treatment is made to a member of the Detention Center staff, the staff member receiving the request will notify the Shift Supervisor of the inmate's request.

It is the Shift Supervisor's responsibility to ensure that the inmate's request is attended to in a prompt and proper manner. Any doubt as to whether an actual need exists for medical treatment shall be resolved in favor of the inmate and medical treatment will be offered.

14.   Medical requests of an emergency nature are to be handled immediately.

15.   As part of the booking process, inmates are informed of the methods by which they may maintain medical treatment during the booking process.

16.   The Detention Center nurses, under the direction of the Detention Center Administrator, are charged with the responsibility of obtaining appointments for inmates with physicians in order that they may receive medical treatment or for scheduling times when the treating physician may attend to health care needs at the Detention Center.

17.   All health care rendered to inmates will, at the doctor's discretion, be given privately to the inmate, outside the presence of a Detention Center official. Should the physician request, a Detention Center officer will be present for any and all examinations the treating physician deems appropriate.

18.   Sick call is conducted on a scheduled basis by a licensed practical nurse and is available to all inmates. All inmates are required to pay a fee for non-emergency treatment. Inmates will not be denied medical treatment. When an inmate has insufficient funds in his/her trust account to pay for the assessed fee(s), a lien in the amount of the fee(s) will be placed on the inmate's trust account against future monies which may be received.

19.   Per the policy of the Lee County Sheriff's Office, I always defer to the instructions of the trained medical professionals on all medical issues.

20.   Dr. McFarland indicated that the Plaintiff's finger could be buddy-taped or splinted. He indicated that, medically, it would make no difference which method was used.

3

Therefore, because of security concerns Nurse Stewart buddy-taped the finger rather than splinting it. Had Dr. McFarland indicated that a splint would be better for the Plaintiff medically, his recommendation would have been followed, and I would have taken steps to preserve the security of the Detention Center such as possibly segregating the Plaintiff from the remainder of the population.

21.     It is the policy of the Lee County Sheriff's Office to maintain a healthy environment within the Lee County Detention Center for the benefit of both inmates and the Detention Center staff.

22.     It is the policy of the Lee County Sheriff's Office that the Lee County Detention Center accomplish scheduled maintenance in order to ensure that the Detention Center facility and equipment are kept in good repair.

23.     Plumbing should be maintained in a serviceable condition, be free from leakage, have enough pressure to accomplish the tasks intended, and water should be the appropriate temperature.

24.     An inmate has the opportunity to notify any officer if any toilet is not in working order, and that officer will either fix the toilet or contact maintenance personnel to fix the toilet.

25.     The Lee County Sheriff's Office employs full time maintenance personnel who are available to repair any toilet which is broken.

26.     I recall only one instance where the Plaintiff notified a Lee County Detention Facility officer that his toilet was stopped up. After the complaint was made, an officer immediately went and unstopped the toilet.

27.     Inmates have access to three or four toilets within their cellblock. There is a toilet in each cell in the cellblock. There is also a toilet in the dayroom of each cellblock.

28.     In the event that a toilet is not able to be repaired before the inmates lock down in their cells at night, the inmates housed in the cell with the broken toilet will not be locked down in order that they may have access to the dayroom toilet.

29.     To my knowledge, the Plaintiff has always had 24-hour access to a working toilet. In fact, it would be a direct violation of policy for an inmate to ever be denied access to a working toilet.

30.     Internal grievance procedures at the Lee County Detention Facility are available to all inmates.  It is the policy of the Lee County Sheriff's Office that inmates are permitted to submit grievances and that each grievance will be acted upon.

31.     All inmates are provided access to a Lee County Detention Center Inmate Handbook.  A copy of this handbook is placed in each cellblock for inmates to review whenever they wish.  The inmate handbook states that an inmate may report a grievance on an inmate request form.  Grievances are first answered by the appropriate staff at the lowest level in the chain of command.  The inmate handbook also states that if the inmate is not satisfied with the first answer to his grievance, the inmate may appeal all the way up the chain of command, up to the Sheriff, who will make the final decision.

32.     I have never received a grievance from the Plaintiff concerning any of the allegations made the basis of his Complaint.  Per Lee County Sheriff's Office policy, an inmate has the opportunity to appeal any grievance to me if he were not satisfied with the response at the lower levels in the chain of command.  The Plaintiff has not done so.  Accordingly, the Plaintiff has failed to exhaust his administrative remedies at the Lee County Detention Center.

33.     The Plaintiff was aware of the method for submitting grievances.  All properly submitted grievances are answered, and a copy is placed in the inmate's inmate file.  Upon my

review of the Plaintiff's inmate file, there are no grievances concerning the allegations made the basis of his Complaint.

34.    I have complied with all policies and procedures of the Lee County Detention Facility. I am not aware of nor have I authorized or allowed any deviation from said policies and procedures.

35.    All Lee County Detention Center records attached to the Special Report are true and accurate copies of jail documents kept by me in the ordinary course of my business. I am the custodian of these records.

36.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit and that the above statements were made by drawing from my personal knowledge of the situation.

_____
CARY TORBERT, JR.

**SWORN TO** and **SUBSCRIBED** before me this _11_ day of April, 2006.

_____
NOTARY PUBLIC
My Commission Expires:_____

6

# Exhibit D
# Affidavit of Nurse Linda Stewart

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

JONATHAN RAY REVELLS,                )
                                     )
        Plaintiff,                   )
                                     )
v.                                   )    Civil Action No.  3:06-CV-179-WKW
                                     )
JAY JONES, et.al.,                   )
                                     )
        Defendant.                   )

## AFFIDAVIT OF NURSE LINDA STEWART

STATE OF ALABAMA           )
                           )
COUNTY OF LEE              )

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Linda Stewart, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.      My name is Linda Stewart.  I am over the age of nineteen and competent to execute this affidavit.

2.      I have been employed as a nurse with the Lee County Detention Facility for over four years.  I am an L.P.N. and have been licensed for over twenty-years, having served as a nurse in the ICU and CCU in Cobb Hospital Emergency Room for fifteen-years.  I taught Nursing Assistance Clinicals for two years at Career Institute.  I collected medical information for the law firm of Bellamy and Jones for three years, and I was employed as the personal nurse for Doctor Hoffman, in Phenix City, Alabama, for twelve years, prior to my coming to the Lee County Detention Facility.

3.      I am familiar with the Plaintiff, Johnathan Ray Revells, due to his incarceration in the Lee County Detention Facility.

4.      Upon the Plaintiff's admission to the Lee County Detention Facility on September 2, 2004, I evaluated his medical condition.

5.      The Plaintiff was coming off of a controlled substance, and he stated that he had been in the woods for the past two weeks.  He had several scratches all over his body.  He also had an old sore on his right ring finger which had opened back up the night before when he was running from the police.  He also had a two week old injury to his little finger.

6.      I cleaned the wound on the ring finger and taped the little finger for comfort.  I also set the Plaintiff up with an appointment to see Dr. John McFarland.

7.      When Dr. McFarland saw the Plaintiff, he noted that the Plaintiff had had his right hand smashed two weeks before he was booked into the jail, resulting in a laceration to his ring finger and injury to the fifth finger.

8.      The Plaintiff had not sought any medical care for his finger injuries for the two weeks prior to coming to the Lee County Detention Facility.

9.      Dr. McFarland ordered an x-ray of the Plaintiff's finger and determined that he had a minimally displaced fracture on his right little finger.

10.      When a person suffers a fracture of any bone, there is a ten-day window in which to correct the deformity.  After ten days, the fracture becomes sticky, and it cannot be corrected at that time.  Because the Plaintiff's injury had occurred longer than ten days before he was booked into the Detention Facility and because he had not sought medical care prior to that time, Dr. McFarland was unable to correct any deformity that might have occurred.  In fact, the fracture was well into the healing process by that time.  The only option available by that time was to protect the finger as it continued to heal.

11.      Dr. McFarland indicated that the Plaintiff's finger should be either buddy-taped or splinted.  He indicated that, medically, it would make no difference which method was used.

2

Therefore, because of security concerns I buddy-taped the finger rather than splinting it. Had Dr. McFarland indicated that a splint would be better for the Plaintiff medically, I would have followed his recommendation, and Major Torbert would have taken steps to preserve the security of the Detention Center such as possibly segregating the Plaintiff from the remainder of the population.

12.    I followed Dr. McFarland's orders with regard to the Plaintiff's medical care. In fact, per the policy of the Lee County Sheriff's Office, I always follow the instructions of Dr. McFarland on all medical issues.

13.    I have never received a grievance from the Plaintiff concerning the allegations made the basis of his Complaint.

14.    All medical records attached to the Special Report are true and accurate copies of medical documents kept in the Plaintiff's medical file by me in the ordinary course of my business. I am the custodian of these records.

15.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit and that the above statements were made by drawing from my personal knowledge of the situation.

_____
LINDA STEWART

**SWORN TO** and **SUBSCRIBED** before me this _11_ day of April, 2006.

_____
NOTARY PUBLIC
My Commission Expires:_____

3

**Exhibit E
Inmate Medical File of Johnathan Ray
Revells, Medical Notes
dated September 2, 2004**

NOTES

SS# ████████████

NAME _Revells, Johnathan_  DOB ████  AGE _25_  SEX _M_  RACE _W_

DRUG ALLERGIES _Ø_                                     TETANUS _____

NATURE OF PROBLEM OR REQUEST _Blood Work done Ya inv._
_11 tubes gvn To Lt. Un. Jackson, assum-_
_ed Scrutiny, ud..._

I CONSENT TO BE TREATED BY HEALTH STAFF FOR THE CONDITION DESCRIBED.

_____
SIGNATURE

*************************************************************************

HEALTH CARE DOCUMENTATION

SUBJECTIVE:

OBJECTIVE: BP _____ P _____ R _____ T _____

ASSESSMENT: _I I/m alert & responsi... Un Cooperativ_
_I/m c/o Old Sore on Rt Rin Fnger upon Back_
_up when rnng from place Saw Fight Saw I/m_
_to Little Finger on Rt Hand Parqual to toul..._
_I/m has multi Scratchs on Arms, Abd,_
_Chest & Neck Ven Ø other c/o_

PLAN: _All Scratch cleand & New Ster applid_
_old open Wound clnsd ā H2O2 ATAI applid dry applid_
_tngue tript trpata for comfrt H2O2 applid ā Mr. Res..._
_To see MD._

REFER TO: _____ (PA/PHYSICIAN)  MENTAL HEALTH _____  DENTAL _____

SIGNATURE _Stewart_  TITLE _LPN_  DATE _9/14/04_  TIME _1300_

**Exhibit F**
**Inmate Medical File**
**Notes dated April 4, 2006**

04/04/06     **Lee County Detention Center**     **Jonathan Revells**     **#416279108**

This 25 YOWM is here for a toothache. He still gets dyspepsia if he doesn't have Pepcid. It is worse in the morning times. His weight is stable. He says he doesn't eat the "store". His other concern is the healing of his right fifth finger. He injured it approximately 08/04. He came to the jail about two weeks after it had been broken. I had seen him about three weeks post injury and recommended buddy taping or splinting, due to security concerns it was buddy taped. We recommended that be done for a total of six weeks (post injury). He says that because of it not being splinted it has healed with a deformity.

**Physical Exam:** He shows me that he can't flex it all the way or straighten it all the way. He says that sometimes when is writing a letter with that side of his hand resting on a surface that it is uncomfortable.

**Impression:** I explained that the bones "get sticky" and stop moving around at about ten days post fracture so that by two and three weeks it is a "done deal" with the position being determined and maintained and that splinting or buddy taping is a means of protecting rather than setting or reestablishing or even maintaining a certain position. I told him that I thought that stretching exercise would help him regain some of the mobility of that fifth finger flexion as well as extension. He doesn't seem to want to do that because he is afraid he might put something out of joint. I tried to explain to him about scar tissue maintaining the position and limiting the motion.

**Plan:** We will avoid NSAIDs but give him Pepcid 20 mg h.s. #30 and recheck him in a month.

**Exhibit G
Affidavit of John McFarland, M.D.**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| **JONATHAN RAY REVELLS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.  3:06-CV-179-WKW** |
| | ) | |
| **JAY JONES, et.al.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**AFFIDAVIT OF JOHN MCFARLAND**</u>

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF LEE** | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared John McFarland, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.      My name is John McFarland.  I am over the age of nineteen and competent to execute this affidavit.

2.      I am a licensed physician serving as an emergency room doctor with East Alabama Medical Center.  Also, since 1994, I have served as the treating physician for inmates at the Lee County Detention Facility.

3.      I am familiar with the Plaintiff, Johnathan Ray Revells, due to his incarceration in the Lee County Detention Facility.

4.      On September 8, 2004, I saw the Plaintiff.  His right hand was smashed two weeks before he was booked into the jail, resulting in a laceration to his ring finger and injury to the fifth finger.

5.      The Plaintiff had not sought any medical care for his finger injuries for the two weeks prior to coming to the Lee County Detention Facility.

6.     I ordered an x-ray of the Plaintiff's finger and determined that he had a minimally displaced fracture.

7.     When a person suffers a fracture of any bone, there is a ten-day window in which to correct the deformity.  After ten days, the fracture becomes sticky, and it cannot be corrected at that time.  Because the Plaintiff's injury had occurred longer than ten days before he was booked into the Detention Facility and because he had not sought medical care prior to that time, I was unable to correct any deformity that might have occurred.  In fact, the fracture was well into the healing process by that time.  The only option available by that time was to protect the finger as it continued to heal.

8.     I ordered that the finger be buddy taped or splinted in order to protect the finger for the remainder of the healing process.  Whether buddy taping or a splint was used to protect the finger made no difference whatsoever.  Therefore, because of security concerns, the Plaintiff's finger was buddy-taped.

9.     If splinting the finger would have been a superior medical option to the buddy-tape, I would have insisted on the splint being used.

10.     After the finger healed, I informed the Plaintiff that he should exercise his finger by stretching and bending it.

11.     I examined the Plaintiff recently.  Upon examination, it was clear that the Plaintiff does in fact have use of the finger which he had broken.

12.     Any problems that he now has with the finger are a result of his not seeking medical care until two weeks after the injury had occurred and because he has not followed my advice concerning exercising the finger.

13.     I have never received a grievance from the Plaintiff concerning the allegations made the basis of his Complaint.

2

14.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit and that the above statements were made by drawing from my personal knowledge of the situation.

_____
JOHN MCFARLAND, M.D.

**SWORN TO** and **SUBSCRIBED** before me this _11_ day of April, 2006.

_____
NOTARY PUBLIC
My Commission Expires:_____

2

**Exhibit H
Medical File, Medical Notes
dated September 8, 2004**

NOTES

SS# ████████ ███████

NAME _Revells, Johnathan_    DOB ████ AGE _25_ SEX _m_ RACE _W_

DRUG ALLERGIES _____Ø_____    TETANUS _____

NATURE OF PROBLEM OR REQUEST ✓ _Rt hand poss Fx._

_____

_____

I CONSENT TO BE TREATED BY HEALTH STAFF FOR THE CONDITION DESCRIBED.

SIGNATURE _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

HEALTH CARE DOCUMENTATION

SUBJECTIVE:

OBJECTIVE:  BP_____ P_____ R_____ T_____

**09/08/04    Lee County Detention Center    Jonathan Revells    #416279108**

This 25 YOWM originally injured his right hand about three weeks ago. He had it smashed. He had a laceration to the ring finger and injury to the fifth finger. It got reinjured later.

**Physical Exam:** Today he has an avulsion laceration with a necrotic flap. It is on the ring finger. It is on the dorsal aspect. The flap is about 1.5 cm in longitudinal dimension and 1 cm in the transverse dimension. There is a necrotic tip of the flap that looks it is about to come off. The wound doesn't look infected. The fifth finger is swollen and tender. It doesn't straighten out completely at the PIPJ. He seems to be most tender at the proximal phalanx. His metacarpals seem okay.

**Impression:** Right hand injury with avulsion laceration of the ring finger and probable fracture of the proximal phalanx of the fifth finger three weeks old.

**Plan:** We will have him keep everything washed and cleansed twice a day with warm soapy water. We will make an x-ray of his hand. We will splint his fifth finger PIP at 180 degrees and the MCP at 120 degrees. Recheck by in one week. At other times he should have it buddy-taped.

REFER TO: _____ PA/PHYSICIAN _____ MENTAL HEALTH _____ DENTAL _____

SIGNATURE _____ TITLE _____ DATE _9/8/04_ TIME _____

# Exhibit I
# Medical File, X-ray Report

09/10/2004  15:30   18003172757          SOUTHERN RADIOLOGY                    PAGE  02
                                                                                   p.5
Sep 10 04 04:14p

# RADIOLOGY GROUP, P.A. OF JACKSON HOSPITAL

1722 PINE STREET - MONTGOMERY, ALABAMA 36106
Suite 307 - Ultrasound & Mammography  Telephone 834-2182
Suite 203 - Diagnostic Radiology  Telephone 834-3671
Business Office Telephone  270-9914

**OFFICE HOURS - 8:00-4:30**

Dr. Donald Dahlene                                    Dr. George Wakefield
Dr. Gary W. Scott                                     Dr. Ken Richardson
Dr. Paul Turner                                       Dr. Stanley Winslow
Dr. Jeffrey Adams                                     Dr. Lewis Gayden
Dr. Robert Hutto

## X-RAY REPORT

**Patient Name:**   REVELLS, JOHNATHAN
**Patient Location:**  SOUTHERN RADIOLOGY SERVICES

**Date of Exam:**   09-09-04
**Procedure:**    RIGHT HAND:

There is an oblique fracture of the proximal phalanx of the 5th finger with several millimeters of bony overlap. There is no angular deformity.

**IMPRESSION:**
MINIMALLY DISPLACED FRACTURE OF THE PROXIMAL PHALANX OF THE 5TH FINGER.

Signed: PAUL TURNER, MD
Transcriptionist: ee
FAXED.